IN THE UNITED STATES DISTRIC COURT
CENTRAL DITRICT OF ILLINOIS
ROCK ISLAND DIVISION

MITCHELL EHRECKE,
    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,
    Defendant.

Case No. 4:13cv4027

## Order and Opinion

### I

Before the Court are cross motions for summary judgment after the Commissioner denied Mr. Ehrecke's claims for disability benefits and supplemental security income. For the reasons stated herein, the Court AFFIRMS the Administrative Law Judge's (ALJ) decision denying Mr. Ehrecke's claims for benefits.

### A

On August 23, 2007, Mr. Ehrecke filed claims for disability insurance benefits and supplemental security income. (D. 9-2 at ECF pp. 47-60). In his applications, Mr. Ehrecke alleged disability beginning April 30, 2007. Id. The claims were denied initially on October 25, 2007. (D. 9-1 at ECF pp. 10-11). The claims were denied upon reconsideration on March 25, 2008. (D. 9-1 at ECF pp. 12-13). On March 31, 2008, Mr. Ehrecke filed a timely request for hearing. (D. 9-1 at ECF pp. 57-58). A hearing was held before the Honorable David W. Thompson on November 20, 2009. (D. 9 at ECF pp. 50-77). Following the hearing, Mr. Ehrecke's claim was denied. (D. 9-1 at ECF pp. 14-34). After a timely Request for

Review, the Appeals Council remanded this matter for a new hearing in order to obtain new medical records, evaluate third party information, further evaluate the claimant's residual functional capacity, obtain evidence from a vocational expert, and properly evaluate whether drug or alcohol use was material. (D. 9-1 at ECF pp. 37-39). A remand hearing was held before the honorable David W. Thompson on November 18, 2011. (D. 9 at ECF pp. 78-105; D. 9-1 at ECF pp. 1-9). The ALJ issued an unfavorable decision. (D. 9 at ECF pp. 22-49). The Plaintiff filed a request for review and the Appeals Council denied that request thereby making the ALJ's decision the final decision of the Commissioner. (D. 9 at ECF pp. 6-21).

Mr. Ehrecke raises two points of error regarding the ALJ's decision. He argues that (1) the ALJ failed to explain the weight given to any of the medical opinions in the record (D. 10-1 at ECF p. 9) and (2) the ALJ failed to properly assess Mr. Ehrecke's alcohol use (D. 10-1 at ECF p. 10). Both of these alleged errors are *legal* in nature, as Mr. Ehrecke acknowledges in his motion. He makes no claim that, absent these alleged legal errors, the ALJ's decision is unsupported by "substantial evidence."

## B

On August 23, 2007, Mr. Ehrecke, a 41 year old single, childless male at the time, applied for benefits. (D. 9-2 at ECF pp. 47-60). He claimed his disability onset date was April 30, 2007. (D. 9-2 at ECF p. 47). On his Form SSA-3368, he stated that the illnesses, injuries or conditions limiting his ability to work were "broken feet, depression, arthritis, broken ribs" because he had "100% pain in my feet. I have difficulty standing for a long period of time. I feel like I have a knife going through my foot. I get stressed out." (D. 9-3 at ECF p. 9). Nevertheless, he also indicated that he cooked, did his own personal care, cooking, cleaning, ironing, dusting, laundry and shopping notwithstanding being "sometimes

depressed/anxious" and having "pain/tiredness." (D. 9-3 at ECF pp. 30-31). He also went out alone to go grocery shopping once each week and went out a couple times weekly to "do errands" and for doctor appointments. (D. 9-3 at ECF p. 32). When he went out, he either walked or rode the bus. (D. 9-3 at ECF p. 32). Mentally, he indicated that he did not sleep well because of "anxiety/depressed/sore feet etc.," but also noted that he enjoyed people, liked to be with them, and was not afraid of people. However, he did note that he did sometimes "get angry and fight with people in "average situations." (D. 9-3 at ECF pp. 32-33). At various stages in the claims process, Mr. Ehrecke submitted medical records, third party information, and his own testimony before the ALJ to support his claims.

## II

### A

The ALJ performed the five-stop sequential evaluation process for determining whether Mr. Ehrecke is disabled as required by the Social Security Administration under the authority of the Social Security Act. 20 CFR 404.1520(a) & 416.920(a). As part of this process, the ALJ made the following findings which Mr. Ehrecke does not dispute:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
2. The claimant has not engaged in substantial gainful activity since April 30, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
3. The claimant has the following severe impairments: status post broken feet, rib problems, arthritis, depression and anxiety (20 CFR 404.1520(c) & 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

3

Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(D. 9-1 at ECF p. 23).

After making these unchallenged findings, the ALJ next made a finding on Mr. Ehrecke's residual functional capacity (RFC). 20 CFR 404.1520(e) & 416.920(e). On this question, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is limited to occasional contact with the public, coworkers, and supervisors; and limited to less than complex tasks.

(D. 9 at ECF p. 33). The Court infers that Mr. Ehrecke's arguments are directed at this finding.[1]

**B**

Mr. Ehrecke first attacks the RFC finding by arguing that "the ALJ failed to explain the weight given to any of the medical opinions in the record." (D. 10-1 at ECF pp. 8-10). Absent citations to well established black letter law, the entirety of Mr. Ehrecke's argument on this point is four sentences:

> In this case, the ALJ failed to explain the weight given to any of the medical opinions in the record. (AR 20-39). The ALJ states he does not give controlling weight to Dr. Lawton's GAF score, but does not explain the weight given to any other medical opinion in the file, including Dr. Singley, the consultative examiner. (AR 36, 30-31). The ALJ failed to explain what weight, if any, was given to the State Agency examiner. (AR 20-39). This is despite the Appeals Council specifically pointing out the ALJ's prior error in failing to discuss the State Agency psychological consultant's opinion and Dr. Lawton's opinion in its Remand Order. (AR 137).

---

[1] Mr. Ehrecke unfortunately nowhere actually identifies what precise finding he attacks. However, given the nature of the alleged legal errors, the only logical inference is that he attacks the RFC finding.

([D. 10-1 at ECF p. 9](D. 10-1 at ECF p. 9)).

It is also worth noting what he does *not* argue, assert, or even suggest. He does not argue how the ALJ *should have* weighed the medical evidence. He does not assert how the alleged failure to properly weigh the medical opinions affected the ALJ's RFC finding. Finally, he nowhere directs the Court to any specific finding or conclusion of the ALJ which was impacted by the alleged error. As the Seventh Circuit has oft repeated, "[j]udges are not like pigs, hunting for truffles buried in briefs . . . or in the record." *[Gutierrez v Kermon](Gutierrez v Kermon)*, 722 F3d 1003, 1012 n3 (7th Cir 2013). Moreover, "[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim." *[United States v Dunkel](United States v Dunkel)*, 927 F2d 955, 956 (7th Cir 1991). A four sentence argument challenging a twenty page ALJ decision accompanied by a 558 page administrative record is not only "skeletal", it is microscopic.

Notwithstanding the paucity of argument, the Court, after carefully reviewing the record and the decision of the ALJ, finds that the ALJ adequately explained the weight given to the medical opinions in this case sufficient to allow the "court to trace the path of his reasoning." *[Diaz v Chater](Diaz v Chater)*, 55 F3d 300, 307 (7th Cir 1995) citing *[Herrong v Shalala](Herrong v Shalala)*, 19 F3d 329, 333 (7th Cir 1994).

## C

First, the ALJ specifically notes that he gave no weight or no "controlling weight" to the following medical opinions:

- Dr. Lawton's January 15, 2008 GAF score of 50 ([D. 9 at ECF p. 37](D. 9 at ECF p. 37); [D. 9-5 at ECF pp. 31-32](D. 9-5 at ECF pp. 31-32))
- Dr. Lawton's January 7, 2009 GAF score of 50 ([D. 9 at ECF p. 39](D. 9 at ECF p. 39); [D. 9-5 at ECF pp. 65-73](D. 9-5 at ECF pp. 65-73))

- Dr. Lawton's January 28, 2010 GAF score of 55 (D.9 at ECF p. 40; D. 9-5 at ECF pp. 47-56)

The ALJ also specifically noted the reasons for not assigning the opinions weight. For the January 15, 2008 opinion, the ALJ explained that "the record does not include any clinical findings or objective evidence to support such a low score" and "it appears the score was based on the claimant's subjective reports rather than objective medical evidence." (D. 9 at ECF p. 37). For the January 7, 2009 opinion, the ALJ explained that "the undersigned does not afford weight to the GAF score, as it is inconsistent with the clinical findings" and "the same evaluation stated that the claimant's overall impairment level was only 'mild' which is inconsistent with a GAF score of 50." (D. 9 at ECF p. 39). For the January 28, 2010 opinion, the ALJ explained that the "GAF score was rated at 55, indicating 'moderate' symptoms; however, the undersigned does not afford controlling weight to the opinion regarding the GAF score, as it is not consistent with the clinical findings" and "the same evaluation revealed the claimants overall impairment level was only 'mild'." (D. 9 at ECF p. 41).

These findings and accompanying explanations belie Mr. Ehrecke's claim that "the ALJ failed to explain the weight given to any of the medical opinions in the record." (D. 10-1 at ECF pp. 8-10). Clearly, he did assign weight to these opinions. Moreover, whether it was erroneous for the ALJ to accord these particular opinions no weight is not before the Court. Mr. Ehrecke's argument is that the ALJ did not assign weight to the opinions; his argument is *not* that the weight given to opinions is erroneous.

6

Accordingly, Mr. Ehrecke has not asked, and the Court will not *sua sponte*, delve into that question.

## D

Although it is true that the ALJ did not explicitly assign weights to the remaining medical opinions on Mr. Ehrecke's GAF, he did not need to do so. The remaining medical opinions are essentially consistent with one another. In other words, having explicitly explained why he was not giving weight to the "outlying" opinions of Dr. Lawton in the 50 to 55 range for Mr. Ehrecke's GAF, it is implicit that he was affording the remaining consistent GAF opinions all the weight.

Specifically, the remaining opinions on Mr. Ehrecke's GAF are as follows:

- August 18, 2007 GAF of 62 by Dr. Lawton ([D. 9-4 at ECF p. 21](); [D. 9 at ECF p. 35]())
- October 12, 2007 GAF of 63 by consultative psychologist Dr. Paul Singley ([D. 9-4 at ECF p. 64](); [D. 9 at ECF p. 35-36]())
- March 35, 2008 GAF of 59 by LCPC Stephen Draminski ([D. 9-5 at ECF p. 63](); [D. 9 at ECF p. 37]())

A GAF in the range of 51 to 60 corresponds to "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning". DSM-IV-TR, p. 34. Only the GAF of Dr. Stephen Draminski falls in this range, but near the very top of it. The other two GAFs fall at the bottom of the 61-70 range, which indicate "[s]ome mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

It is therefore implicit in the ALJ's decision that, having specifically declined to accord weight to the GAF scores in the 50 to 55 range, he was conversely according weight to the remaining GAF scores within the

relatively narrow range of 59 to 63. To repeat, because Mr. Ehrecke makes no argument challenging the weight given to any opinion, the Court will not delve into the question of whether the ALJ should or should not have accorded these opinions weight, as opposed to the others which he did not.

For the sake of completeness, the Court notes that there is only one GAF score in the 50 to 55 range that the ALJ did not specifically reject like the others (a medical record that Claimant's counsel neither mentions nor to which he directs the Court in his argument). Specifically, on July 6, 2010, an "Individual Treatment Plan" from Trinity Medical Center lists Mr. Ehrecke's GAF as a 55. ([D. 9-5 at ECF p. 45](#)). The record is signed by a physician other than Dr. Lawton, but the signature is illegible. Id. The ALJ notes this fact in his decision, but does not explicitly reject it like the other low scores. ([D. 9 at ECF p. 41](#)). It is clear, however, that the ALJ's explicit rejection of the January 28, 2010 GAF score encompasses this medical record. The July 6, 2010 record contains virtually no information concerning the evaluation or diagnosis of Mr. Ehrecke; rather, it specifically links back to the January 28, 2010 where, under the "Linkage to Recommendations/Needs" section, the "DA Date" is listed as January 28, 2010. ([D. 9-5 at ECF p. 47](#)). Given this linkage and the absence of any new clinical findings or recommendations, the July 6, 2010 GAF score came directly from the January 28, 2010 GAF score which the ALJ explicitly rejected. Accordingly, even if the Court were to remand the case to allow the ALJ to explicitly address this single record, given the above, it is virtually certain the ALJ would reject the GAF score.

To be sure, the ALJ could have been more explicit about assigning weight to the opinions he did not explicitly reject, but he did so sufficiently

8

to allow the "court to trace the path of his reasoning." *Diaz*, 55 F3d at 307 citing *Herrong*, 19 F3d at 333. Accordingly, the ALJ did not commit the legal error averred.[2]

### III

Mr. Ehrecke also argues that the ALJ erred in evaluating the claimant's history of alcohol abuse. (D. 10-1 at ECF p. 10). He argues that the ALJ somehow applied the wrong standard when considering Mr. Ehrecke's alcoholism and that instead of applying the proper legal standard, the ALJ assumed that the claimant "has continued to use substances in the same manner he had in the past," which, according to Mr. Ehrecke, was a legal error. Id. The ALJ made no such error.

First, as the Commissioner points out, the operative regulation is 20 CFR § 404.1535, which very clearly provides that "[*i*]*f we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." The regulation then sets forth the process for evaluating the impact of alcoholism or drug addiction *after* a determination of disability has been made. 20 CFR § 404.1535(b). Specifically, in 1996, the Social Security Act was amended to reflect changes in the award of benefits related to substance abuse. The statute reads, in pertinent part, that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 USC § 423(d)(2)(C), amended by PubL No. 108–

---

[2] If there are medical opinions other than the GAFs which Mr. Ehrecke believes were not weighted, Claimant's counsel has not identified them to the Court.

203 (March 2, 2004). This amendment is interpreted as barring benefits "if alcohol or drug abuse comprises a contributing factor material to the determination of disability ...." *Brueggemann v Barnhart*, 348 F3d 689, 693 (8th Cir 2003). The procedures outlined in 20 CFR § 404.1535(b) provide direction on how, *after a finding of disability is made*, the ALJ should determine whether alcohol or drug addiction are a "contributing factor" to the disability, thereby precluding benefits notwithstanding the initial finding of disability if such use is a contributing factor.

Accordingly, only *after* a determination of disability is made, does the ALJ then proceed to determine whether a claimant would still be disabled if he or she stopped using drugs and alcohol. Because the ALJ found that Mr. Ehrecke was *not* disabled, the provisions of 404.1535(b) have no application to this case.

Second, the ALJ decision makes it clear that he did not assume that Mr. Ehrecke "has continued to use substances in the same manner he had in the past," (D. 10-1 at ECF p. 10) but instead quite the opposite. The portion of the ALJ decision to which Mr. Ehrecke directs the Court is:

> Although the evidence indicates continued problems with alcohol abuse and, likely, prescription drug abuse, the claimant testified that he last used alcohol in 1999 and that he never used street drugs or marijuana. The undersigned will afford the claimant the benefit of the doubt in concluding that he does not abuse alcohol or drugs. Nevertheless, the evidence supports a conclusion that the claimant has used alcohol since 1999, which impugns his credibility. Regardless of substance use, the evidence does not support the degree of mental symptoms and functional limitations alleged.

(D. 9 at ECF p. 41; D. 10-1 at ECF pp. 10-11). This quote unambiguously states that the ALJ "will afford the claimant the benefit of the doubt in

concluding that he *does not abuse alcohol or drugs*" (emphasis added). Id. In other words, contrary to Mr. Ehrecke's assertion, the ALJ concludes that Mr. Ehrecke does not abuse alcohol or drugs *at all,* thereby not considering them as a factor when making the disability determination. Under no reasonable interpretation can the above quote be read in the manner Mr. Ehrecke suggests for, if the ALJ assumed that the claimant "has continued to use substances in the same manner he had in the past," then he would have assumed Mr. Ehrecke *was still abusing* alcohol and prescription medication. The ALJ's opinion demonstrates just the opposite and, consequently, he did not commit the error Mr. Ehrecke argues occurred.

Finally, Mr. Ehrecke takes the above quote out of context. The quote in question appears in the ALJ decision at the second paragraph in a series of six paragraphs explaining why Mr. Ehrecke's credibility was impugned due to his inconsistent statements regarding his alcohol and drug use to the various medical professionals he had seen in the past. See D. 9 at ECF pp. 41-42 (discussing the claimant's credibility). The ALJ was not attempting to apply 20 CFR § 404.1535(b) when mentioning the alcohol and drug use; he was using it as an example of why the defendant was not credible.

## IV

For the reasons stated above, the Court DENIES the Plaintiff's Motion for Summary Judgment (D. 10) and GRANTS the Defendant's Motion for Summary Judgment (D. 14). This case is TERMINATED. Given the parties' consent to have a United States Magistrate Judge conduct any and all proceedings in this case including the entry of final judgment (D.

19), any appeal of this Order shall be directly to the United States Court of Appeals for the Seventh Circuit.

So Ordered.

Entered on May 22, 2014

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE